```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
UNITED STATES OF AMERICA,                              :    20 Cr. 133 (JSR)
                                                       :
             -v-                                       :
                                                       :
FREDERICK SCHEININ,                                    :
                                                       :
                         Defendant.                    :
                                                       :
-------------------------------------------------------X
```

## FREDERICK SCHEININ'S MOTIONS *IN LIMINE*

**DAVID E. PATTON, ESQ.**
Federal Defenders of New York, Inc.
Attorney for Defendant
    **FREDERICK SCHEININ**
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8700

Of Counsel:

**Tamara Giwa, Esq.**
**Sylvie Levine, Esq.**
Assistant Federal Defenders
(917) 890-9729

TO:  **AUDREY STRAUSS, ESQ.**
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, NY 10007

      Attn:  **Nicholas Chiuchiolo, Esq.**
              **Daniel Nessim, Esq.**
              Assistant United States Attorneys
              Southern District of New York

**PRELIMINARY STATEMENT**

  Mr. Scheinin respectfully moves *in limine* for an order:

1. Precluding the government from introducing communications between Mr. Scheinin and an undercover officer ("UC-1") made on Grindr and Snapchat ; and

2. Precluding the government from introducing unredacted photographs of Mr. Scheinin's genitalia.

For the reasons outlined below, these motions should be granted.

**BACKGROUND**

  Mr. Scheinin is charged in a three-count indictment alleging that from October 2019 through January 2020, Mr. Scheinin attempted to produce and receive child pornography, and to entice a minor to engage in sexual activity. The government alleges that Mr. Scheinin communicated with an undercover officer ("UC-1") who he believed was 14 years old. The communications began on Grindr, an online social-networking and dating application. The communications then continued on Google Voice, an online telephone service, and Snapchat, a multimedia online messaging application. The government further alleges that from October 2019 through January 2020, Mr. Scheinin sent the undercover officer photographs of his genitalia. Mr. Scheinin was arrested on January 16, 2020.

  **I.** **Grindr communications**

The government alleges that Mr. Scheinin and UC-1 first communicated on Grindr, an online social-networking and dating application. The communication was

2

in the form of text messages sent within the application. The government, per notes that UC-1 prepared shortly after Mr. Scheinin's arrest, alleges that the communications occurred at various times beginning in the spring of 2019. See UC-1 notes, undated, attached as Exhibit A. Those communications continued through the date of Mr. Scheinin's arrest on January 16, 2020.

UC-1 did not preserve any of her Grindr communications with Mr. Scheinin. The only Grindr messages that are available to either party are the portion of the messages that were saved in the Grindr application on Mr. Scheinin's phone. Those saved messages begin on October 26, 2019 – approximately 6 months after the communications began.

The Grindr communications on Mr. Scheinin's phone application were obtained by the government through an extraction of Mr. Scheinin's telephone (and were, in turn, produced to the defense on July 7, 2020, May 28, 2021, and June 1, 2021). The Grindr messages made between UC-1 and Mr. Scheinin over the course of several months from the spring of 2019 through October 25, 2019 are permanently lost – due to the government's failure to preserve the messages. In a letter dated May 17, 2021, the government informed the defense that it does not possess, and is unable to obtain, communications between Mr. Scheinin and UC-1 that occurred prior to October 26, 2019. See Government letter, May 17, 2021, attached as Exhibit B.

At no point during her communication with Mr. Scheinin -- from the spring of 2019 until Mr. Scheinin's arrest on January 16, 2020 – did UC-1 make any attempt to preserve her Grindr communications with Mr. Scheinin. UC-1 did not, for

example, download software that would preserve her communications, download the messages, or serve Grindr with either a subpoena or preservation letter when her communications with Mr. Scheinin began. Instead, the government informed counsel that on September 20, 2019, UC-1's Grindr account was deactivated and the months' worth of prior communications were lost. Not only has the government been unable to obtain the messages from Grindr, the government has not shown what attempts, if any, were made to preserve those communications contemporaneously, or to recover them once their loss was discovered.[1] For example, the government has not provided any relevant extractions of UC-1's phone.

The unpreserved, missing messages are of the utmost importance to this case. For example, the only occasion on which UC-1 allegedly told Mr. Scheinin that she was 14 – an essential element of all three crimes charged in the indictment – was supposedly during the period of time in which no messages were preserved. All of the initial communications between UC-1 and Mr. Scheinin are lost.

## II.   Snapchat communications

The government alleges that on November 8, 2019, Mr. Scheinin and UC-1 began communicating on Snapchat, a multimedia messaging application that allows users to communicate by text message and video chat. The government further

---

[1] The government produced a preservation letter that the U.S. Attorney's Office sent to Grindr, but this was not sent until November 19, 2019 – at least 9 months after the communications with Mr. Scheinin began. The government also produced a warrant for Mr. Scheinin's Grindr account, but that was not signed by a Magistrate Judge until February 20, 2020 – over a month after Mr. Scheinin's arrest, and at least 11 months after the communications on Grindr began.

4

alleges that the communications on Snapchat continued through the date of Mr. Scheinin's arrest on January 16, 2020.

Some of the Snapchat communications consist of text messages. Instead of a full spreadsheet containing a comprehensive record of all communications, the government has produced photographs of someone scrolling through messages on what is presumably UC-1's telephone. It appears that one telephone was used to take photographs of messages on another telephone. Some of the Snapchat communications consist of video chats. Some video chats were produced in the form of audio or video recordings that were made by members of law enforcement present during the conversations.

The Snapchat production, consisting of photographs and videos of Snapchat messages, is incomplete. It is clear from a straightforward reading of the communications that significant portions are missing. For example, the production of communications from November 15, 2019, copied below, begins with the following:

**3:12 pm**: "Hey u think i should make a new 1"

**6 pm**: "If you want to lol"

**6:17 pm**: "Not sure yet. Might hang out with friends… might stay in my pajamas all weekend lol Hbu."



USAO_001156



USAO_001157



USAO_001158

The production of communications from December 9, 2019, copied below, begins with the following:

**8:08 pm**: "Pretty boring. Didn't do much lol"

**8:08 pm**: "How about yours?"



USAO_001333

These two examples, the likes of which are found throughout the Snapchat production, make clear the extent of the missing communications: the first message produced is clearly responding to previous messages that are not captured. Notably, the government concedes, in response to a defense request for discovery, that for communications occurring on November 15, 2019, November 18, 2019, December 9, 2019, and January 2, 2019, a portion of the communications lack context, but the government is not aware of the basis for that missing context. See Government

7

letter, May 26, 2021, attached as Exhibit C. The government makes the assurance that all screenshots of the communications on those days were produced. What the government is unable to do is guarantee that all of the communications were *preserved*.

The Snapchat communications consisting of video chats were also inadequately preserved. In both the criminal complaint and a search warrant affidavit, the government referenced Snapchat video chats on November 8, 2021. See Search warrant affidavit, USAO_000964 – USAO_000981, attached as Exhibit D. While the government produced an audio recording of that conversation, the video portion of that communication was not preserved. The government produced at least two additional audio recordings for conversations where the video was not preserved. In fact, law enforcement reports produced to the defense indicate that video recordings were only made on four dates.

It is clear that neither UC-1 nor any other law enforcement sufficiently preserved the Snapchat communications. The government was aware that messages on Snapchat can be viewed for a limited period before they become inaccessible. Id. However, no attempt was made to preserve all of the communications contemporaneously. To the defense's knowledge, law enforcement did not, for example, use any 3rd-party software to monitor and preserve the communications.[2]

---

[2] The government produced a preservation letter sent to Snap, Inc., but that letter was not sent until January 14, 2020, two days before Mr. Scheinin was arrested, and over two and a half months after the communications on Snapchat began. The government produced an application for a search warrant for Mr. Scheinin's Snapchat account, but that warrant was not signed by a Magistrate Judge until February 10, 2020, almost one month after Mr. Scheinin's arrest.

Other than photographs of a telephone, preserving only certain messages, the entirety of the communication between Mr. Scheinin and UC-1 is lost.

**ARGUMENT**

   I. **The government should be precluded from introducing incomplete communications made on Grindr and Snapchat**

The government is seeking to introduce at trial selected communications that are incomplete and fail to capture the entirety of the correspondence between Mr. Scheinin and UC-1. This cannot be permitted, when the government's entire case is based on those incomplete excerpts. Such partial evidence lacks relevance, and any possible relevance is substantially outweighed by a danger of unfair prejudice, confusion, and a risk of misleading the jury. See Fed. R. Evid. 401, 403. Without access to the original and complete Grindr and Snapchat communications, the jury will be unable to put them into their proper context. The case against Mr. Scheinin consists almost entirely of these communications, and the jury's ultimate determination will hinge on their understanding of the communications. The introduction of evidence that is incomplete, lacking in context, and missing significant portions will be confusing and misleading.

The introduction of these partial communications would also violate Fed. R. Evid. 106 and 1002. Under Fed. R. Evid. 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." This "rule of completeness" cannot be satisfied in this case in the absence of all of the Grindr and Snapchat

9

communications exchanged between UC-1 and Mr. Scheinin. Relatedly, under Fed. R. Evid. 1002, "[a]n original writing, recording or photograph is required in order to prove its content," but the government has not provided the original communications. See also Gordon v. United States, 344 U.S. 414, 421 (1953) ("The elementary wisdom of the best evidence rule rests on the fact that the [original] document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description….").

In addition, the failure to preserve the communications also means that the government did not obtain or preserve communications that are a likely source of Brady and Giglio material. For example, UC-1 alleges that in the unpreserved Grindr messages sent before October 26, 2019, she informed Mr. Scheinin that she was 14 years old. None of Mr. Scheinin's responses to this alleged communication – which are central to his defense -- are available.

Allowing the government to introduce partial records of the communications is prohibited by the Federal Rules of Evidence.

## II. The government should be precluded from introducing photographs of Mr. Scheinin's genitals

The Government intends to introduce photographs of Mr. Scheinin's genitalia, which he sent over the internet to the undercover officer, during its case-in-chief. Defense counsel moves to exclude such photographs in unredacted form as not relevant and unduly prejudicial. Descriptions of the images, or redacted images (specifically, redactions that obscure Mr. Scheinin's penis), are sufficient for the government's purposes and would preserve Mr. Scheinin's rights.

There is no dispute that <u>the fact that</u> Mr. Scheinin sent pictures of his genitalia to the undercover can be presented to the jury. However, showing the jury unredacted pictures makes no fact in this case more or less probable. <u>See</u> Fed. R. Evid. 401. Indeed, there will be no factual disputes about Mr. Scheinin's penis at trial—nor will there be any dispute that Mr. Scheinin sent photographs via the internet to the undercover. <u>Cf.</u> <u>United States v. Gartenlaub</u>, 14 Cr. 173, 2015 WL 7574743, at *3 (C.D. Cal. Nov. 23, 2015) (finding photographs of a naked adult male, who was "possibly defendant" were relevant to demonstrate that "defendant had access to and knowledge of the folders on his computer where these photographs were stored.").

Even if the Court were to find the unredacted pictures minimally probative, such value is substantially outweighed by the obvious danger of unfair prejudice. <u>See</u> Fed. R. Evid. 403; <u>see also</u> <u>United States v. Koebele</u>, 07 Cr. 2015, 2008 WL 63293, at *4 (N.D. Iowa Jan. 3, 2008) (granting a motion <u>in limine</u> pursuant to Rule 403 to exclude all references to the defendant's adult girlfriend sending him a picture of her genitalia because it "is plainly potentially unfairly prejudicial, in that it could provoke jurors to discount any testimony by [the girlfriend] as an emotional reaction to what jurors might consider scandalous or inappropriate behavior"). For example, in <u>Gartenlaub</u>, <u>supra</u>, despite finding the fact of the photographs and their location to be relevant, the Court held that it "is not persuaded that it is necessary to show the pictures themselves to the jury" because the government could argue the necessary inferences without them. <u>Gartenlaub</u>, 14 Cr. 173, 2015 WL 7574743,

at *3. Moreover, the prohibition of the "quite graphic" photographs would "lessen the potential for unfair prejudice to defendant." Id. The same is true here.

The government will be able to make any and all arguments about the fact that Mr. Scheinin sent photographs of his penis to the undercover officer, without showing his genitalia to the jury. Presenting unredacted photographs to the jury will create a grave and unnecessary risk that the jury will judge Mr. Scheinin—whose actions and credibility are squarely at issue in this case—based on an emotional reaction to embarrassing images of his most private body parts. Such a risk is prohibited by the Rules of Evidence and the unredacted images should be excluded.

**CONCLUSION**

For the reasons stated above, the Court should grant the motions *in limine* to preclude the introduction of certain evidence.

Dated:   June 2, 2021
         New York, NY

Respectfully submitted,

Tamara Giwa, Esq.
Sylvie Levine, Esq.
Assistant Federal Defenders

Counsel for Frederick Scheinin