UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                    :
UNITED STATES OF AMERICA                            :            20 Cr. 133 (JSR)
                                                    :
            -v.-                                     :
                                                    :
FREDERICK L. SCHEININ,                              :
                                                    :
                            Defendant.              :
                                                    :
-----------------------------------------------------------------x


## THE GOVERNMENT'S MOTIONS *IN LIMINE*


AUDREY STRAUSS
United States Attorney
Southern District of New York


Nicholas W. Chiuchiolo
Daniel G. Nessim
Assistant United States Attorneys
    *Of Counsel*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 8

   I. The Defendant Should Not Be Permitted to Present an Entrapment Defense at
     Trial Unless and Until He Proffers Evidence to the Court That Is Capable of Supporting
     Such a Defense ................................................................................................................... 8

     A. Applicable Law ........................................................................................................... 8

     B. Discussion ................................................................................................................. 10

   II. The Court Should Allow the Government to Present Evidence of the
     Defendant's Prior Criminal Conduct and Expressed Sexual Interest in Young Males. ...... 13

     A. Background ................................................................................................................ 14

     B. Applicable Law ......................................................................................................... 15

     C. Discussion ................................................................................................................. 17

   III. The Court Should Disallow Cross-Examination on UC-1's
      Unrelated Narcotics Undercover Work ........................................................................... 18

   IV. Evidence or Argument Concerning the Consequences the Defendant
      Faces if Convicted Should be Precluded ......................................................................... 19

CONCLUSION ......................................................................................................................... 21

## **TABLE OF AUTHORITIES**

*Mathews v. United States*, 485 U.S. 58 (1988) ............................................................ 11

*Rogers v. United States*, 422 U.S. 35 (1975) ................................................................ 19

*Shannon v. United States*, 512 U.S. 573 (1994)............................................................ 19

*Sorrells v. United States*, 287 U.S. 435 (1932)............................................................ 16

*United States v. Acosta,* 67 F.3d 334 (1st Cir. 1995).................................................... 17

*United States v. Bala*, 236 F.3d 87 (2d Cir. 2000)......................................................... 8

*United States v. Balkany*, 468 F. App'x 49 (2d Cir. 2012) ........................................... 11

*United States v. Brand*, 467 F.3d 179 (2d Cir. 2006) ................................................. 8, 9

*United States v. Brunshtein*, 344 F.3d 91 (2d Cir. 2003).............................................. 9

*United States v. Cervantes,* 706 F.3d 603 (5th Cir. 2013) ........................................... 16

*United States v. Cromitie*, 727 F.3d 194 (2d Cir. 2013) ........................................... 9, 17

*United States v. Demosthene*, 334 F. Supp. 2d 378 (S.D.N.Y. 2004)........................... 12

*United States v. Duran,* 596 F.3d 1283 (11th Cir. 2010) ............................................. 16

*United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003) ............................................... 15

*United States* v. *Gagliardi*, 506 F.3d 140 (2d Cir. 2007) ............................................. 9

*United States* v. *Hurtado*, 47 F.3d 577 (2d Cir. 1995).................................................. 9

*United States v. Jean-Charles*, No. 15-80055-Cr-Rosenberg/Hopkins,
2015 WL 7820716 (S.D. Fla. Dec. 2, 2015).................................................................. 12

*United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989) ......................................... 18

*United States* v. *Mayo*, 705 F.2d 62 (2d Cir. 1983)...................................................... 12

*United States v. McDarrah*, No. 05 Cr. 1182 (PAC) (S.D.N.Y. Dec. 19, 2006).......... 13

*United States v. McLaughlin*, 957 F.2d 12 (1st Cir. 1992) ........................................... 19

*United States v. McLaurin*, 764 F.3d 372 (4th Cir. 2014) ........................................... 17

ii

*United States v. Mergen*, No. 06 Cr. 352 (NGG), 2010 WL 395974 (E.D.N.Y, Feb. 3, 2010).... 13

*United States v. Ogle*, 328 F.3d 182 (5th Cir. 2003) ..................................................... 8

*United States v. Pabon-Cruz*, 391 F.3d 86 (2d Cir. 2004)............................................. 20

*United States v. Reed,* 977 F.2d 14 (1st Cir. 1992)....................................................... 16

*United States v. Reese*, 933 F. Supp. 2d 579 (S.D.N.Y. 2013) ...................................... 12

*United States v. Riley*, No. 13 Cr. 339 (VEC), 2014 WL 3435721 (S.D.N.Y. July 14, 2014) ..... 19

*United States v. Rivera*, 971 F.2d 876 (2d Cir. 1992) ................................................... 18

*United States v. Russell*, 411 U.S. 423 (1973) ............................................................. 16

*United States v. Rutkoske*, 506 F.3d 170 (2d Cir. 2007) ............................................... 15

*United States v. Salerno*, 66 F.3d 544 (2d Cir. 1995).................................................... 9

*United States v. Sherman*, 200 F.2d 880 (2d Cir. 1952) (L. Hand, J.)............................. 8

*United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989)............................................ 16, 17

*United States v. Van Horn*, 277 F.3d 48 (1st Cir. 2002) ............................................... 16

*United States v. Viviano*, 437 F.2d 295 (2d Cir. 1971) ................................................. 17

*United States v. Williams*, 205 F.3d 23 (2d Cir. 2000) ................................................. 17

*United States v. Williams*, 23 F.3d 629 (2d Cir. 1994) .................................................. 8

## PRELIMINARY STATEMENT

The Government respectfully seeks rulings *in limine* on certain evidentiary issues in advance of the June 16, 2021 trial in this case. *First*, the Government moves to preclude the defense from offering an entrapment defense because the defendant has failed to demonstrate any evidence of governmental inducement and, even if he could, there is ample and uncontested evidence of predisposition. *Second*, the Court should allow the Government to offer evidence of the defendant's expressed sexual interest in younger males as evidence of the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, pursuant to Federal Rule of Evidence 404(b), and, in the event the Court allows the defendant to offer an entrapment defense, as evidence of the defendant's predisposition to commit the charged offenses. *Third,* the Court should disallow cross-examination into the undercover officer's unrelated undercover narcotics work. *Finally*, the defendant should be precluded from making arguments that are not properly presented to the jury and are simply a guise for jury nullification. These arguments include the mandatory minimum sentences faced by the defendant if convicted.

## BACKGROUND

Indictment 20 Cr. 133 (the "Indictment") was filed on February 13, 2020 in three counts. Count One charges the defendant with attempted production of child pornography, in violation of 18 U.S.C. §§ 2251(a), (e), and 2. Count Two charges the defendant with attempted receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B), (b)(1), and 2. Count Three charges the defendant with attempted coercion and enticement of a minor, in violation of 18 U.S.C. §§ 2422(b) and 2. The Government expects that the evidence presented at trial will establish the following facts, in substance and in part:

Sometime prior to October 26, 2019, the defendant, a diversion investigator at the Drug Enforcement Administration (the "DEA"), began communicating with an undercover law

1

enforcement officer ("UC-1" or "Lou") using Grindr, a popular social networking and dating application, sending UC-1, among other things, a photograph of an erect penis and ejaculate. (Dkt. No. 1 ("Compl.") ¶ 6.) After brief communications with the defendant, UC-1's Grindr account was deactivated due to a violation of Grindr's terms of service.[1] UC-1 created a new account (using the same profile photo and name), and on October 26, 2019, the defendant reinitiated contact with Lou. The defendant provided his telephone number, and Lou and the defendant began communicating through text message. Over the course of these text messages, taking place over several days, Lou stated that he lived at home with his mother in Sunnyside, Queens, and that he was fourteen years' old. The defendant responded "alright." (Compl. ¶ 7(a).)

Also on October 26, 2019, the defendant began discussions concerning an in-person meeting, writing "So when are we gonna chill?" The defendant's efforts to push Lou to meet in person continued from there. Four days later, on October 30, 2019, the defendant followed up about an in-person meeting, asking "SO when are you gonna be free?" On November 1, 2019, after learning that the fourteen-year-old Lou did not take the subway, the defendant expressed his confusion as to how Lou would travel to the defendant's home in Sunnyside, Queens, for their in-person meetup. On November 5, 2019, the defendant asked Lou to video chat before they met in person, leading to their first live, verbal conversation. During a November 5, 2019 telephone call, UC-1 mentioned a prior sexual experience, and the defendant asked a number of follow up questions, seeking more detail about the Lou's sexual history.

---

[1] Grindr prohibits individuals under the age of eighteen from using Grindr services. At the time of the deactivation, UC-1 had been communicating with multiple individuals, including the defendant, and represented to all of those individuals that UC-1 was a minor.

On November 7, 2019, the defendant and Lou discussed having a real-time video chat, and the defendant suggested using Snapchat, a multimedia messaging application that offers its users the ability to communicate with each other through text messages, photographs, and real-time video chats. (Compl. ¶ 7(d).) Messages and photographs sent over Snapchat are usually only available for a short period of time before they are deleted and then become inaccessible to the recipient. (*Id.*) Over the course of several months—from approximately November 2019 until the time of the defendant's arrest in January 2020—the defendant regularly communicated with Lou over Snapchat. (*See generally* Compl. ¶¶ 7(e)-8(c).) During these communications, as set forth in greater detail below, the defendant displayed his genitals, masturbated, and pressured Lou to display his genitals, telling Lou, on one occasion, that he "want[s] something to think about while . . . jerking off."[2] (Compl. ¶¶ 7(l)-(m), (o), (q)-(s).) The defendant and Lou also discussed meeting in person for the purpose of having sex. (Compl. ¶¶ 8(a)-(c).)

On November 8, 2019, the defendant and UC-1 had a video chat over Snapchat.[3] During this November 8, 2019 video chat, UC-1 asked the defendant, "so you like don't care that I'm younger?" The defendant responded, "No, it's cool. As long as you're cool with it." Approximately one minute later, the defendant steered the conversation in a sexual direction, asked UC-1, "have you ever like done anything on Snapchat before, you know, like, jerked off with someone or anything like that?" UC-1 responded "No," and the defendant replied "I have." The defendant thus issued the first beginnings of an invitation to engage in video cybersex with Lou. The defendant also made clear that, although this cybersex "gets the job done," "it's better in person," opening

---

[2] During all video chats with the defendant, UC-1's appearance was partially disguised to be consistent with that of a fourteen-year-old boy.

[3] Law enforcement audio recorded (and in some instances video recorded) the defendant's Snapchat video chats with UC-1.

the door to in-person sexual activity. Following this Snapchat facetime, the defendant expressed his intent even more explicitly, sending Lou a Snapchat text message reading "I was gonna ask you to show me something sexy but I was too shy lol."

The defendant continued to exchange messages with UC-1 over Snapchat throughout November 2019, discussing topics such as high school, Lou's parents, alcohol, and Lou taking the subway by himself. On December 4, 2019, UC-1 sent a text message, "hey," to the defendant's cellphone. The defendant responded on Snapchat: "Got your text before. I think it's better we chat on here." (Compl. ¶ 7(h).) (As set forth above, unlike text messages, Snapchat messages are only available for a short period of time before they are automatically deleted.)

The defendant continued raising the issue of meeting in person. In a Snapchat video conversation on December 19, 2019, the defendant stated "Maybe one day I will see you out from the blanket." UC-1 expressed a willingness to do so, and the defendant began trying to schedule a meeting, which Lou informed the defendant could take place any time after he was out of school. The defendant was prepared to meet with Lou the next day, and they made tentative plans to meet. Following this conversation, at approximately 6:50 p.m., it was the defendant, again, who initiated discussion about creating and receiving child pornography. Over Snapchat text messages, the defendant wrote "You should send me a sneak peak lol." UC-1 replied "Sneak peak of wat lol," to which the defendant answered "What's hiding under the blanket," insinuating that he wanted to see a photograph of Lou's penis. At approximately 9:55 p.m. that night, the defendant again asked "Send me a pic."

On December 20, 2019, the defendant and UC-1 had multiple video chats using Snapchat. (Compl. ¶ 7(l).) The defendant again turned the conversation toward receiving pornographic photographs of Lou. Between one of these video chats, the defendant sent Lou a photograph of his

erect penis. Following the distribution of these photographs, the defendant told UC-1 to "send something similar to what I just sent you," meaning the photograph of his penis. UC-1 told the defendant that Lou had to go to dinner with his father. Later that night, at approximately 10:21 p.m., the defendant asked Lou to send a picture before going to sleep. When UC-1 asked for guidance concerning what kind of picture to send the defendant, the defendant, after demurring in part, asked UC-1 to "Send me what I sent you." UC-1 wrote to clarify "The dick pic?," to which the defendant replied "Yah." The defendant sent UC-1 a photograph of his penis, covered by underwear, and then a second photograph of his erect penis. UC-1 sent a photograph of UC-1's boxer shorts, writing "I'm a tease." The defendant continued to push to receive a photograph of UC-1's penis, writing, among other things "I promise not to judge if that's what your nervous about. I don't care about size or hair or anything else like that lol." The defendant sent UC-1 another photograph of his erect penis, in the hopes that it would "change [UC-1's] mind." The defendant's last message of the night was "Let me seee."

On January 3, 2020, the defendant asked Lou to delete all of their text messages. Using Snapchat, the defendant texted, "Can you do me a favor? Can you delete our texts out of your phone? You know, just in case she [Lou's mother] goes crazy and decides to look through your text messages lol. . . . That's why I like Snapchat. It always deletes everything immediately lol." The defendant then asked Lou, "when are we gonna chill lol." UC-1 responded, "Deftly soon." (Compl. ¶ 7(n).)

On January 7, 2020, the defendant and UC-1 had a video chat over Snapchat, and the defendant again repeatedly asked Lou to display his genitals and to send the defendant photos of Lou's genitals. (Compl. ¶ 7(o).) In response, UC-1 said "I kinda want to," and the defendant responded, "I think you should. Just really quick," and that the defendant wanted to see Lou's

penis both "hard" and "soft" to decide "which way I like it better." UC-1 stated that UC-1 would be more at ease in sending pornographic photographs if UC-1 and the defendant first met in person. The defendant continued to badger UC-1 to send the defendant pornographic photographs. The next day, over Snapchat text message, the defendant again asked for more photographs.

On January 9, 2020, the defendant and UC-1 had another video chat over Snapchat. (Compl. ¶ 7(q).) The defendant again turned the conversation toward meeting in person, telling UC-1 that the defendant was "thinking about what's like, what's next," which turned quickly into a discussion about meeting in person. UC-1 stated that his father would be traveling the week of January 19 and said that they could hang out at the father's Manhattan apartment. UC-1 asked the defendant to bring condoms and lubricant because UC-1 was afraid that sex would be painful and was afraid of contracting a sexually transmitted disease.

The defendant also again stated that he wanted to see UC-1's penis. The defendant stated that he wanted "something to think about while jerking off." During this conversation, the defendant continually asked to see Lou nude, and told Lou that if he didn't start stimulating his penis (and show the defendant), the defendant would not meet Lou in person. The defendant also called UC-1 a "pussy" for not showing the defendant UC-1's penis. The defendant also told UC-1 that if UC-1 continued to refuse to show the defendant UC-1's penis, the defendant would not bring lubricant to their planned meeting, subjecting UC-1 to greater pain when the defendant and UC-1 engaged in sex. The defendant also said that he wanted to imagine "playing" with and "sucking" Lou's penis. Lou said that he was too nervous to send a photograph of his penis, but that he did not want the defendant to forget about him. In an apparent effort to persuade Lou to send a visual depiction of his penis, the defendant said, "I don't know. What If I find like a new cute boy to talk while I'm soo horny right now." (Compl. ¶ 7(s).)

On January 14, 2020, the defendant again pushed to meet in person. He asked Lou to make a "pit stop" at the defendant's Queens apartment, and the defendant sent Lou the location information for the subway stop that would be closest to the defendant's apartment.

On January 15, 2020, the defendant and UC-1 discussed meeting in person the next day. (Compl. ¶¶ 8(a)-(d).) They agreed to meet near the Staten Island Ferry terminal in lower Manhattan. UC-1 asked, "you still want to fuck?" and the defendant responded, "yeah. . . . Are you sure you can handle it?" UC-1 responded, "only if you bring the lube."

In the afternoon of January 16, 2020, the defendant traveled from the DEA's Manhattan Office to the Staten Island Ferry terminal to meet Lou for sex. Law enforcement agents placed the defendant under arrest and recovered from his person, among other things, a condom, bottle of lubricant, and an Apple iPhone X (the "Scheinin iPhone.")

Pursuant to a judicially authorized search warrant, the Government searched the Scheinin iPhone and recovered evidence of, among other things, text messages between the defendant and UC-1; the photograph of an erect penis and ejaculate that the defendant sent to UC-1, internet searches concerning Flushing High School, where UC-1 told the defendant Lou was a student; web history showing that on January 13, 2020, the defendant viewed a CNN article about an associate of then-President Donald Trump who pled guilty to child enticement and child pornography charges; and Grindr chats with other individuals in which the defendant expresses his sexual interest in young males.

## ARGUMENT

**I.    The Defendant Should Not Be Permitted to Present an Entrapment Defense at Trial Unless and Until He Proffers Evidence to the Court That Is Capable of Supporting Such a Defense**

Defense counsel have indicated that they may argue at trial that the defendant was the victim of an entrapment scheme by the Government. However, the defendant has not pointed to any evidence supporting an entrapment defense, and the Government is not aware of any credible basis from which the defendant could argue that the Government induced him to commit the crimes of attempted production of child pornography, attempted child enticement, or attempted receipt of child pornography. Moreover, even if the defendant could make a showing that he was induced to participate in the crimes, there is uncontroverted evidence that the defendant was predisposed to engage in the charged enticement and child pornography conduct. Therefore, the defendant should be precluded from making an entrapment argument to the jury.

### A.   Applicable Law

Entrapment is an affirmative defense, and in the first instance, the defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to a jury instruction on that defense. *United States v. Brand*, 467 F.3d 179, 189-90 (2d Cir. 2006); *see also United States v. Williams*, 23 F.3d 629, 635 (2d Cir. 1994) ("Entrapment is an affirmative defense that requires a defendant to prove by a preponderance of the evidence the government's inducement to commit the crime"). The defense has two elements: "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part." *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000) (internal quotation marks omitted).

The burden of showing inducement "should not be treated as a hollow requirement." *Brand*, 467 F.3d at 190. "Inducement includes 'soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged.'" *Id.* (quoting *United States v. Sherman*, 200

8

F.2d 880, 883 (2d Cir. 1952) (L. Hand, J.)). To be entitled to a jury instruction on entrapment, the defendant must "present not just a smattering or a scintilla of evidence of government inducement, but substantial evidence that it was the Government that was responsible for the formation of" the defendant's criminal intent. *United States v. Ogle*, 328 F.3d 182, 187 (5th Cir. 2003). To satisfy the burden of establishing inducement, a defendant must do more than "simply point to the [G]overnment's use of an undercover agent." *Brand*, 467 F.3d at 190 (internal quotation marks omitted). For "[w]hile stealth and strategy are necessary weapons in the arsenal of the police officer, and artifice and stratagem may be employed to catch those engaged in criminal enterprises, that the government employed either does not necessarily mean that it was the government that initiated the crime." *Id.* (internal quotation marks omitted).

If a defendant establishes inducement, "[t]he burden then shifts to the government to show that the defendant was predisposed to commit the crime beyond a reasonable doubt." *United States v. Gagliardi*, 506 F.3d 140, 149 (2d Cir. 2007). "Predisposition, the principal element in the defense of entrapment, focuses upon whether the defendant was an unwary innocent, or instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *United States v. Cromitie*, 727 F.3d 194, 204 (2d Cir. 2013). "A defendant is predisposed to commit a crime if he is ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so." *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995) (internal quotation marks omitted).

> [P]redisposition may be shown by evidence of: "(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement."

*Brand*, 467 F.3d at 191 (quoting *United States v. Brunshtein*, 344 F.3d 91, 101-02 (2d Cir. 2003)).

Where the Government's evidence of predisposition is uncontroverted, the defendant is precluded from offering an entrapment defense. *See United States* v. *Hurtado*, 47 F.3d 577, 585 (2d Cir. 1995) ("If the government . . . presents uncontradicted proof of predisposition, the entrapment defense is precluded as a matter of law."); *United States v. Mayo*, 705 F.2d 62, 70 (2d Cir. 1983) ("[T]he entrapment defense will not go to the jury in the face of substantial evidence of propensity unless the defendant produces some evidence to contradict directly the prosecution's showing.").

### B. Discussion

The defendant should not be allowed to argue entrapment to the jury because he can present no credible evidence of Government inducement. Nor can he offer any evidence to rebut the overwhelming evidence of predisposition.

As for inducement, there is simply no evidence that the Government is responsible for the defendant's crime. Rather, it is clear that the defendant was the driving force motivating the crime charged in this case. The defendant wished to engage in sexual activity with the undercover account from the outset, sending "Lou" a photograph of an erect penis and ejaculate. Then, on October 26, 2019, the defendant reinitiated contact with Lou. Throughout their conversations, as described in part above, the defendant continued to try to arrange a meeting with Lou. These communications did not change even once Lou made clear that he was fourteen years' old. Although there were a few occasions where UC-1 would also initiate the prospect of actually meeting in person, the conversations are clear that both the person responsible for the first discussions concerning in-person meeting and the party most responsible for continuing to request an in-person meeting was the defendant.

It is also the defendant who initiated and repeatedly pushed for the creation, and to receive, pornographic photographs and video depictions of the minor Lou's penis. These requests were for

the defendant's sexual gratification, as the text, video, and photographic communications make clear. The Government had no part in instigating these crimes with the defendant either.

Given the absence of governmental inducement of the defendant's crimes, the defendant cannot satisfy his preliminary evidentiary burden. The defendant cannot simply point to the Government's use of undercover agents and social media accounts to satisfy his burden. *See Brand*, 467 F.3d at 190; *see also Mathews v. United States*, 485 U.S. 58, 66 (1988) ("Of course evidence that Government agents merely afforded an opportunity or facilities for commission of the crime would be insufficient to warrant . . . an [entrapment] instruction."). This lack of inducement alone suffices to bar the defendant from arguing entrapment to the jury. *See United States v. Balkany*, 468 F. App'x 49, 51-52 (2d Cir. 2012) (affirming district court's refusal to instruct jury on entrapment defense where the defendant had initiated all criminal conduct).

But even if the defendant could present sufficient evidence of Government inducement, he cannot rebut the overwhelming evidence of his predisposition to commit the charged offense. The defendant's conduct exhibits "a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." *Brand*, 467 F.3d at 191 (quoting *Brunshtein*, 344 F.3d at 101-02). First, as is discussed in greater detail below, the defendant engaged in conversations with at least three other individuals in which the defendant continued to engage in sexual conversations with minors, requested and received pornographic photographs of minors, arranged to meet with and have sex with a minor, requested that a minor communicate with him on Snapchat, and expressed his sexual interest in young men.

In addition, the defendant's eager willingness to exchange sexualized communications with Lou, his repeated demands and threats to obtain pornographic images of fourteen-year-old Lou, his ready desire to meet Lou, and his actual conduct in meeting Lou with a condom and

lubricant in tow constitute a "ready response" and is clear evidence of predisposition. As is clear from the defendant's chats with the account he believed to be fourteen-year-old Lou, from the start, the defendant was prepared to engage in the criminal conduct. There was no reluctance, and he did not need convincing. He was predisposed to commit these offenses, and this uncontroverted evidence of predisposition defeats an entrapment defense and should disallow its presentation to a jury.

Unless and until the defendant offers evidence of inducement or can contradict the substantial predisposition evidence, he is not entitled to present a defense of entrapment to the jury. *See Hurtado*, 47 F.3d at 585 ("If the government . . . presents uncontradicted proof of predisposition, the entrapment defense is precluded as a matter of law." (citing *United States v. Dunn*, 779 F.2d 157, 159 (2d Cir. 1985))); *Mayo*, 705 F.2d at 70 ("[T]he entrapment defense will not go to the jury in the face of substantial evidence of propensity unless the defendant produces some evidence to contradict directly the prosecution's showing . . . . where the government has established a track record of criminal activity on the part of the accused that matches the conduct for which he is charged, he is not entitled to have the entrapment defense go to the jury upon the mere showing that he was initially reluctant to commit the crime.").

Without a factual basis from which to argue entrapment, any attempt by the defendant to assert this defense at trial (during opening statements or cross-examination) would confuse the jury and prejudice the Government—especially if no entrapment charge is ultimately provided by the Court. *See United States v. Jean-Charles*, No. 15-80055-Cr-Rosenberg/Hopkins, 2015 WL 7820716, at *5 (S.D. Fla. Dec. 2, 2015), *report and recommendation adopted* Dkt. 206 (recommending pretrial exclusion of entrapment defense and related arguments because it "could serve but one purpose, to cause jury confusion or nullification); *see also United States v. Reese*,

933 F. Supp. 2d 579, 584 (S.D.N.Y. 2013) (ruling, in advance of trial, that defendant could not advance certain arguments clearly "aimed at jury nullification"); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (A defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case.") *United States v. Mergen*, No. 06 Cr. 352 (NGG), 2010 WL 395974, at *7 (E.D.N.Y, Feb. 3, 2010) (where defendant's theory is "legally insufficient" court can properly "preclude Defendant from presenting the defense to the jury").

In the alternative, if the defense is permitted to make this argument but the evidence at trial is insufficient to support an entrapment charge, the Government respectfully requests that the Court instruct the jury that entrapment is not a defense in this case with the following curative instruction:

> There has been some mention in this trial about entrapment. Entrapment is a complicated legal doctrine, but it has nothing at all to do with this case. I am instructing you as a matter of law that entrapment is not a defense in this case and you are not permitted to consider it during your deliberations.

The proposed instruction is adapted from the charge given by the court in *United States v. McDarrah*, No. 05 Cr. 1182 (PAC) (S.D.N.Y. Dec. 19, 2006).

## II. The Court Should Allow the Government to Present Evidence of the Defendant's Prior Criminal Conduct and Expressed Sexual Interest in Young Males.

The Court should allow the Government to offer evidence of the defendant's expressed sexual interest in younger males as evidence of the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, pursuant to Federal Rule of Evidence 404(b), and, in the event the Court allows the defendant to offer an entrapment defense, as evidence of the defendant's predisposition to commit the charged offenses.

## A. Background

Pursuant to a search warrant, the Government extracted records from the Scheinin iPhone, including Grindr chats between the defendant and other individuals. In at least two Grindr conversations the defendant had with others, the other person told the defendant that he was fifteen, and the defendant nevertheless engaged in sexual conversation. In one of these conversations, the defendant moved the conversation to Snapchat and, in the other conversation, the defendant appears to have met up and possibly engaged in sexual activity with the minor.

On March 26, 2019, the defendant reached out to a Grindr user ("User-1"). The following conversation was exchanged, in part:

| Defendant: | Hey |
|---|---|
| User-1: | Hey |
| Defendant: | What's up? |
| User-1: | Nothin u might not want me im 15 |
| Defendant: | It's cool |
| User-1: | Okayy |
| User-1: | U top or bottom |
| Defendant: | Top |
| | [ . . . ] |
| Defendant: | When are you looking for? |
| User-1: | Umm first to give a bj and maybe fucking the second time we meet wbu |
| Defendant: | Sounds good |
| Defendant: | Do you have snapchat? |
| User-1: | [Provides Snapchat account] |

In another conversation beginning on August 8, 2019, the defendant was chatting with a different Grindr user ("User-2"). The defendant wrote asking for pictures of User-2, to which User-2 replied "im 15 and just want to know how sucking a dick is like." The defendant replied simply, and undeterred, "Do you have any pics?" User-2 sent a picture and asked for a photograph of the defendant's penis. The defendant asked if User-2 had any "xxx pics" and "nudes." He encouraged

14

User-2 to take some of "dick, ass.. it's all good." User-2 appears to have taken and sent photographs. User-2 asked the defendant "would u want to have sex," to which the defendant replied "I'm down." The defendant and User-2 discussed meeting in person, with the defendant providing his address and some times that he would be available to host User-2, presumably to engage in sexual activity.

On October 14, 2019, the defendant initiated a chat with another Grindr user ("User-3"), and had the following exchange, in part:

| | |
|---|---|
| User-3: | Ohh damn and I'm kinda new to this and nervous and pretty young |
| Defendant: | Haha it's cool. I'll be gentle and ease you into it |
| User-3: | Alright daddy, you into younger guys? Or your age more |
| Defendant: | Yeah definitely |
| User-3: | What's the youngest? |
| Defendant: | Depends I guess lol. Why do you ask? |
| User-3: | Wanna see if I'm your youngest lol |
| Defendant: | Well I mean I lost my virginity at 17 to a 16 year old lol |
| User-3: | Lol damn you fucked them? |
| Defendant: | Yeah |
| User-3: | Daman that's hot, how old are you now? |
| Defendant: | 29 |
| User-3: | Damn that's hot, guess my age |
| Defendant: | 18 |
| User-3: | Yeah lol, is that hot for you |
| Defendant: | Yeah definitely |

B. **Applicable Law**

Federal Rule of Rule 404(b) provides that evidence of a crime, wrong, or other act, while inadmissible to prove propensity, may be admitted for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Second Circuit has long followed "an inclusionary approach to evaluating Rule 404(b) evidence . . . ." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003). Accordingly, "other acts" evidence is admissible under Rule 404(b) so long as "(1) it is introduced for a proper

purpose, (2) it is relevant to the charged offense, (3) its prejudicial effect does not substantially outweigh its probative value, and (4) it is admitted with a limiting instruction if requested." *United States v. Rutkoske*, 506 F.3d 170, 176–77 (2d Cir. 2007).

Moreover, when the defendant raises an affirmative defense of entrapment he opens the door to evidence of a wide range of uncharged bad acts, on the question of whether he was predisposed to commit the charged crime. *See United States v. Tutino*, 883 F.2d 1125, 1138 (2d Cir. 1989). As the Supreme Court has stated, when "'the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue.'" *Russell*, 411 U.S. at 429 (quoting *Sorrells v. United States*, 287 U.S. 435, 451-52 (1932)). "If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense." *Sorrells*, 287 U.S. at 451-52.

"Evidence of prior acts intended to rebut an entrapment defense falls within the ambit of Rule 404(b)." *United States v. Cervantes,* 706 F.3d 603, 615 (5th Cir. 2013). Other acts evidence that tends to show a defendant's predisposition to commit a particular crime, even if the other act is lawful, is highly probative in cases in which the defendant asserts an entrapment defense, and in such situations, the evidence can overcome the Rule 404(b) bar even if it would not in the absence of the entrapment defense. *See United States v. Van Horn*, 277 F.3d 48, 57 (1st Cir. 2002); *United States v. Duran,* 596 F.3d 1283, 1299 (11th Cir. 2010) ("[B]ecause similar acts used to demonstrate predisposition are offered precisely to show propensity, they are more broadly applicable, and their use is not subject to the normal constraints of evidence admitted pursuant to Rule 404(b).")

Prior conduct probative of predisposition need not be a conviction to warrant admission. "[I]t really is the underlying conduct, perhaps more than the conviction itself, which becomes a

material issue concerning the previous offense.'" *United States v. Reed,* 977 F.2d 14, 16 (1st Cir. 1992) (quoting the trial judge in that case). "[T]he underlying conduct could be even more important . . . where no conviction exists" because the "details of the misconduct" may be necessary to "make the incident meaningful to the predisposition issue." *Van Horn*, 277 F.3d at 58. Moreover, "prior acts admitted under 404(b) need not be *bad* acts," *Brand*, 467 F.3d at 199 n.18 (emphasis in original), nor involve the exact crimes now charged, *United States v. Viviano*, 437 F.2d 295, 299 n.3 (2d Cir. 1971) ("[E]vidence of prior criminal conduct [need not] be formally the same as the crime charged." (internal quotation marks omitted)); *Tutino*, 883 F.2d 1138; *United States v. McLaurin*, 764 F.3d 372, 382-83 (4th Cir. 2014); *United States v. Acosta,* 67 F.3d 334, 339 (1st Cir. 1995).

## C.  Discussion

Here, the Grindr chats described above, in which the defendant continued to engage in sexual conversation with individuals who identified themselves as minors, requested the creation and distribution of pornographic photographs of minors, planned to meet in person to engage in sex with minors, and expressed his sexual attraction to young males, are admissible as evidence of the defendant's predisposition to commit the charged crimes, that is, attempting to entice a minor to engage in sexual conduct and attempting to produce and receive child pornography. These chats are highly relevant to demonstrating that the defendant was not an "unwary innocent" ensnared by the Government's investigation but "instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Cromitie*, 727 F.3d at 204. The probative value of this evidence to show predisposition is only heightened by its close temporal proximity to the defendant's communications with UC-1. Moreover, these Grindr chats are analogous to or, in the case of the conversation with User-3, far less sensational than the charged conduct and thus there is no danger that the admission of this evidence would inflame the jury. *See United States v.*

17

*Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (finding no undue prejudice under Rule 403 where "the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction"). Accordingly, if the Court allows the defense to advance an entrapment defense, the Government should be permitted to introduce the Grindr chats referenced above, pursuant to Rule 404(b), to demonstrate the defendant's predisposition to commit the charged crime. Moreover, the Court should allow the Government to introduce the Grindr chats if the defendant disputes his intent, motive, knowledge, or identity in committing the charged offenses. For example, if the defendant were to argue that he did not know (or did not believe) that Lou was fourteen years' old, the Government should be permitted to introduce the Grindr chats, which show on other occasions the defendant was unfazed by engaging in sexual conversations and exchanging pornography with minors and that he previously expressed a sexual interest in young males.

## III.   The Court Should Disallow Cross-Examination on UC-1's Unrelated Narcotics Undercover Work

The Government anticipates calling UC-1 to testify about UC-1's interactions with the defendant. In addition to working in an undercover capacity in pedophilia-related cases, UC-1 also works as an NYPD undercover in narcotics investigations. The Government moves to limit cross-examination of UC-1 to the scope of their direct testimony and to those matters the Court finds bear on the credibility of the testifying officers, consistent with Rule 611(b). The Government specifically moves to preclude cross-examination of UC-1 involving UC-1's engagement in unrelated narcotics investigations.

Under Rule 611(b), "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." *See also United States* v. *Rivera*, 971 F.2d 876, 886 (2d Cir. 1992) ("[C]ross-examination should be limited to the subject

matter of the direct examination and matter affecting the credibility *of the witness.*" (quoting Fed. R. Evid. 611(b) (emphasis in *Rivera*)). Thus, when a law enforcement officer testifies about certain discrete matters, district courts may properly limit cross-examination to those same matters and subjects bearing directly on the credibility of that witness's testimony. *See United States v. Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989) (affirming trial court's limitation of cross-examination of case agent to those subjects on which the agent testified); *United States v. McLaughlin*, 957 F.2d 12, 18 (1st Cir. 1992) ("[A] party has no right, unless the court in the exercise of its discretion allows, to cross-examine a witness beyond the subject matter of his direct examination and beyond matters affecting credibility.").

The Government understands that the defendant intends to cross UC-1 about UC-1's work as an undercover, including in narcotics cases.[4] This work is unrelated to UC-1's involvement in the instant case, and would serve only to confuse the issues before the jury. Such cross examination is irrelevant to UC-1's testimony, does to go to credibility, and should be precluded.

## IV. Evidence or Argument Concerning the Consequences the Defendant Faces if Convicted Should be Precluded

Argument and evidence concerning the possible consequences of conviction should be precluded. It is well established that the jury's function is to find the facts and to determine whether, based on those facts, the defendant is guilty of the crime charged. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). Information regarding the potential

---

[4] Defense counsel have stated that they do not intend to cross UC-1 concerning specific targets, defendants, or other identifiable case-related details.

consequences of a guilty verdict is irrelevant to the jury's task. *See id.* Providing jurors with such information invites them to consider matters that are outside of their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion. *See id.*; *see also United States v. Riley*, No. 13 Cr. 339 (VEC), 2014 WL 3435721, at *2 (S.D.N.Y. July 14, 2014). The Second Circuit has directly held that a jury should not be instructed on or aware of possible mandatory minimum sentences. *See United States v. Pabon-Cruz*, 391 F.3d 86, 91-92 (2d Cir. 2004).

These rules exist for good reason. As discussed above, arguments concerning incarceration are irrelevant to the jury's task and threaten to confuse the jury and risk nullification. But there are also additional reasons these arguments should be precluded. Allowing the defendants to submit these arguments to the jury creates a gap where the Government must, in effect, remain silent because the contrary arguments are plainly improper to submit to a jury. Considering the clear impropriety of the Government making such arguments to the jury, the defendant is no more able to make the converse arguments to the jury. Rather, all of these arguments concerning the consequences of a conviction should be made to a judge in connection with sentencing. The defendant should accordingly be precluded from offering evidence or argument that has no purpose but to seek to persuade the jury to consider punishment, or any other potential consequence of conviction.

## **CONCLUSION**

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated: New York, New York
       June 2, 2021

                                        Respectfully submitted,

                                        AUDREY STRAUSS
                                        United States Attorney

                              By:  /s/_____
                                        Nicholas W. Chiuchiolo
                                        Daniel G. Nessim
                                        Assistant United States Attorneys
                                        (212) 637-1247/-2486

21